IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROGER LEE BOWERS,

        Petitioner,

v.                                          Civil Action No. 2:11-cv-73
                                          (Judge Bailey)

DAVID BALLARD, Warden,

        Respondent.

## REPORT & RECOMMENDATION

### *I. INTRODUCTION*

On September 13, 2011, Roger Lee Bowers (Petitioner) filed a petition under 28 U.S.C. § 2254 challenging his state court conviction in Berkeley County, West Virginia. After several rounds of motions to amend this petition, and enlargements of time to do so, Mr. Bowers moved to quash all prior pleadings to amend the petition and stuck with his original. On May 21, 2012, this Court ordered Respondent to show cause why the petition should not be granted, and on July 18, 2012, Respondent filed a Motion for Summary Judgment (Doc. 42). Subsequent to the filing of that motion, the Court issued a *Roseboro* Notice[1] to inform Petitioner of his right to file responsive material. After two extensions of time, Petitioner filed his response to the motion, which is now ripe for this Court's review.

### *II. THE STATE CONVICTION & REVIEW*

On May 16, 2001, a Berkeley County, West Virginia, grand jury charged Petitioner in a multi-count indictment with several offenses, including felony murder, relating to the sale of heroin

---

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

which contributed to the death of Jason Scott Gettel. Prior to trial, Petitioner's first court appointed attorney withdrew due to a conflict of interest in formerly representing one of the state's witnesses, and the Berkeley County Public Defender was appointed. Trial began on November 6, 2001, lasted four days, and resulted in Petitioner's conviction and sentence to life in prison, with mercy, for the felony murder charge, and up to fifteen years for the distribution of heroin charge.

On November 30, 2001, Petitioner filed a motion for a new trial, and, after counsel was appointed and several hearings later, the trial court denied Petitioner's motion. On May 17, 2002, Petitioner appealed his conviction to the West Virginia Supreme Court of Appeals. The state's highest court denied the petition, without a written opinion of reasons. Two of the Justices did, however, express their belief that everyone convicted in West Virginia who receives a life sentence should be afforded review. No direct appeal was filed with the United States Supreme Court.

Petitioner then moved to collaterally attack his conviction and sentence in state court, filing a habeas petition on January 8, 2003 in the Circuit Court of Berkeley County. On February 24 of that year, the state accepted the habeas petition and appointed the first of several attorneys that would work on Petitioner's case. Moreover, the state provided funds for Petitioner to hire an expert. After several amended petitions, and several years later, the respondent in the state habeas case filed a motion to dismiss. The state court held an omnibus hearing on December 22, 2009, and in May of the following year denied the petition in its entirety, issuing a thirty page finding of fact and conclusion of law. In October 2010, Petitioner filed a state habeas petition with the West Virginia Supreme Court of Appeals. That petition was denied in February 2011 without written opinion. The instant petition followed. It is both timely, and all issues raised in the instant petition have been exhausted in the state courts.

In his petition, Mr. Bowers raises the following grounds for why the writ should be granted: (1) his trial counsel was ineffective for failing to request an autopsy on the victim and by failing to offer the testimony of an expert at trial, and that his due process rights were denied when an autopsy was not performed; (2) his due process rights were violated in the trial court's instruction to the jury on the elements of felony murder, and his counsel was ineffective for failing to object to those instructions; (3) his counsel was ineffective for failing to request lesser included offense instructions; (4) his due process rights were violated, and his lawyer was ineffective, when both failed to answer questions from the jury; and (5) his due process rights were violated because of these cumulative errors at trial. Petitioner's claims boil down to two issues: Was his right to due process violated? And was his counsel ineffective?

## III. STANDARD OF REVIEW

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

In viewing the motion for summary judgment, the Court must do so under the constraints imposed by the habeas statue. Under § 2254, this Court may not grant federal habeas relief unless it concludes that West Virginia's adjudication of the claim "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362 (2000). A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 405. A state court decision "involves an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court," 28 U.S.C.A. § 2254(d)(1), if the state court decision "identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412. An objectively "unreasonable application of federal law is different from an incorrect or erroneous application of federal law." *Id*. Thus, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable" for habeas relief to be granted. *Id*. at 411.

## IV. DISCUSSION

Because Petitioners five points of error fall within the confines of two constitutional doctrines, due process and effective assistance of counsel, the Court will address them in that fashion.

### A. Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective for several reasons, including: (1) failure to demand an autopsy on the victim to determine the cause of death; (2) failure to present an expert

witness; (3) failure to demand that the trial court include lesser included offenses on the verdict

form; and (4) failure to answer questions posed by the jury. When a petitioner brings an ineffective

assistance of counsel claim, counsel's conduct is measured under the two part analysis in *Strickland*

*v. Washington*, 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance

was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

"'Deficient performance' is not merely below-average performance; rather, the attorney's actions

must fall below the wide range of professionally competent performance." *Griffin v. Warden,*

*Maryland Corr. Adj. Ctr.*, 970 F.2d 1355, 1357 (4th Cir. 1992).

Second, the defendant must show that the deficient performance prejudiced the defense. This

requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a

trial whose result is reliable. In order to demonstrate prejudice, the defendant must show that but for

his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S.

at 687. Error by counsel which falls short of the constitutional ineffectiveness standard does not

constitute cause, notwithstanding that the error may arise from inadvertence, ignorance or strategic

choice. *Murray v. Carrier*, 477 U.S. 478 (1986); *Griffin v. Aiken*, 775 F.2d 1226 (4th Cir. 1985)

*cert. denied*, 478 U.S. 1007 (1986).

When reviewing claims of ineffective assistance under § 2254(d), as modified by the Anti-

Terrorism and Effective Death Penalty Act (AEDPA),

> [t]he pivotal question is whether the state court's application of the
> Strickland standard was unreasonable. This is different from asking
> whether defense counsel's performance fell below Strickland's
> standard. Were that the inquiry, the analysis would be no different
> than if, for example, this Court were adjudicating a Strickland claim
> on direct review of a criminal conviction in a United States district

5

> court. Under AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an incorrect
> application of federal law." A state court must be granted a deference
> and latitude that are not in operation when the case involves review
> under the Strickland standard itself.

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (internal citation omitted). Section 2254, as amended by the AEDPA, is meant to be a high bar because it deals with claims that have already been litigated in state court. *Id.* at 786. Accordingly, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). With this standard in hand, the Court will now look to Petitioner's allegations.

### 1. Failure to Request an Autopsy

Petitioner's felony murder conviction is grounded on the fact that the victim was killed by an overdose of heroin that was provided by Petitioner. When the medical examiner arrived on the scene where the victim was found, she determined that the victim was, in fact, dead, and then because of the unusual circumstances of the scene the car was moved to a lighted garage, with the body in it, before any examination was done. (Resp't Ex. 15 at 195-96.) Once removed to the garage, a cursory examination of the body revealed the head and neck to be completely purple, and pink frothy secretions coming from the victim's nose and mouth. (*Id.* at 197.) The body was then taken to a funeral home where the medical examiner performed a thorough examination. That examination revealed several needle marks in the right arm. (*Id.* at 198.) The medical examiner discussed the results of this examination with her supervisor, who would perform the autopsy if any were conducted, and it was decided that there was enough evidence to conclude a cause of death without an autopsy. (*Id.* at 200-01.) The cause of death was positional asphyxia, with alcohol and heroin usage as contributing factors. (*Id.* at 202.)

In addition to the testimony of the medical examiner, the State offered several eyewitnesses to the events that transpired that night. Those witnesses testified that they and the victim were out drinking the night of the death, and decided to call Petitioner to purchase cocaine.(Resp't Ex. 17 at 212.) When the group met with Petitioner to purchase the cocaine they found out that he only had heroin for sale. (*Id*. at 213). The testimony went on to reveal that the victim purchased the heroin from Petitioner, was injected with the heroin by Petitioner's girlfriend, and then passed out and turned purple. (*Id*. at 217-18.) The group, including Petitioner, then devised a plan to move the body, leaving it in one of the witness's car, and calling the police to report the car stolen. (*Id*. at 208-22.) Finally, the state presented expert witnesses that testified to the toxicity of the victim's blood, including the levels of heroin and its effect.

The state habeas court found that "Petitioner's speculation that an autopsy would have refuted the combined eyewitness observations and the scientific toxicology testing does not demonstrate that the Petitioner's trial counsel acted below an objectively unreasonable standard in not moving for an independent autopsy or that . . . the results of the proceeding would have been different." This Court finds that this is not contrary to, or an unreasonable application of, clearly established federal law as is required under § 2254. Nor was the state court's decision based on an unreasonable determination of the facts.

As mentioned, under *Strickland* a Petitioner would have to show that an attorney's failure to do something at trial fell below a competent standard. At least one Court of Appeals has found that an attorney does not fall below this standard by not requesting an autopsy. *See Willis v. Newsome*, 771 F.2d 1445, 1148 (11th Cir. 1985) ("The decision of appellant's counsel not to seek an autopsy to identify the murder weapon was not 'ill chosen.' It was the result of sound

deliberation, and was a reasonable tactical decision."). Similarly, here counsel thought it wise to make the state prove the cause of death beyond a reasonable doubt, rather than having more evidence to push the jury towards a verdict of guilty. This was a trial strategy, and not the type of error protected by the Fifth Amendment.

Moreover, *Strickland* requires two separate inquiries. Thus, even if the Court were to find that counsel's decision resulted in ineffective assistance the Petitioner must still show that he was prejudiced by this action and that the result in the trial would have been different. There was ample evidence through both toxicology reports and eyewitness testimony to lead a reasonable jury to find that Petitioner was guilty of the crime charged. The Court agrees with the state habeas court that Petitioner has failed to satisfy not just one, but both prongs of *Strickland*, and his claim of ineffective assistance with regard to the autopsy issue must fail.

### 2. Failure to Present an Expert Witness

Similar to the autopsy issue, the state court found that "Petitioner cannot claim that trial counsel acted unreasonable or that, had counsel put on such evidence, the outcome of the trial would have changed." It is well settled that courts should not hastily second guess the tactical decisions made by counsel during the pendency of a trial because they have first hand knowledge of the facts, the witnesses, and information outside the record on review. *See e.g. Strickland*, 466 U.S. at 691; *Bobby v. Van Hook*, 558 U.S. 4 (2009). Even if Petitioner shows that expert testimony "could support [his] defense, it would be reasonable to conclude that a competent attorney might elect not to use it." *Harrington*, 131 S. Ct. at 789. Accordingly, Petitioner's claim with regard to the expert testimony that his counsel could have offered is unavailing.

### 3. Failure to Request Lesser Included Offense Instructions

The state habeas court succinctly stated that the decision not to put lesser included offenses on the verdict form was, as Petitioner admitted in his petition to that court, a matter of trial strategy. Again, this is not contrary to, or an unreasonable application of, *Strickland*, as many federal courts have held that this is a practice of trial strategy. *See e.g. Pruett v. Thompson*, 996 F.2d 1560 (4th Cir. 1993); *Kogianes v. Thomas*, 182 Fed. App'x 681 (9th Cir. 2006); *Neal v. Acevedo*, 114 F.3d 803 (8th Cir. 1997); *Magnotti v. Secretary for Dept. of Corrections*, 222 Fed. App'x 934 (11th Cir. 2007).

*4. Failure to Object to the Jury Instructions and to Answer a Question About Those Instructions*

Petitioner's allegations here revolve around the jury instructions provided by the trial court, and a question by the jury during its deliberation. This contention was not specifically raised on direct appeal or in the state habeas petition. However, during the state's omnibus hearing on the petition, the court allowed the argument to be made. (Resp't Ex. 21 at 70-73.) Nowhere in the state's decision on the habeas petition was this argument addressed. Nonetheless, because the Court finds that the jury instruction was not constitutionally defective, *infra B.2,* Petitioner's counsel would certainly not have been in any position to object to the instruction. Even more certainly, the decision to deny the petition, even without written reasons, *see Harrington*, 131 S. Ct. at 784, is not contrary to, or an unreasonable application of the *Strickland* standard because Petitioner has failed to show that the jury would have delivered a different verdict had the instruction been different.

The question sought further explanation of an instruction that the commission of a felony, here distribution of heroin, "directly resulted in the death" of the victim. The state habeas court found that the "parties agreed that they could not answer the question except to advise the jury that they must give the words their plain English usage," and that the "trial court has an obligation to *re-read* an instruction to the jury *if the defendant requests that the court do so*." (Resp't Ex. 12 at 18.)

(emphasis in original, citing West Virginia cases). Further, the state court found that Petitioner did not request a re-read, nor did he offer any legal basis that his counsel had an obligation to further explain words, that his counsel was unreasonably deficient, or that the outcome would have been different had his counsel formulated some response to the question. (*Id*. at 18-19.) Again, in light of the review that this Court undertakes within the confines of § 2254, the Court cannot find that the state court's findings are contrary to, or an unreasonable application of, the *Strickland* standard.

## B. Due Process

Petitioner also claims that his right to due process was violated because: (1) there was no autopsy performed on the victim; (2) the trial court submitted improper instructions on felony murder to the jury; and (3) the trial court failed to answer the aforementioned question by the jury. The Court will address each of Petitioner's arguments in turn.

### 1. The Autopsy Revisited

Petitioner claims that his right to due process was violated when he was convicted without an autopsy performed on the body to confirm a cause of death. The Court views this as a challenge to the sufficiency of the evidence used to convict Petitioner, because, as he claims, an autopsy *might* have revealed something other than the toxicity of the victim's blood. Again, with the standard for habeas review, the Court must look to whether the state's decision to deny relief on Petitioner's claim is contrary to, or an unreasonable application of, clearly established federal law.

It is clear that someone who claims to be held pursuant to a state court decision that was the result of insufficient evidence presented at trial can raise a claim for violation of due process in a habeas proceeding. *See Jackson v. Virginia*, 443 U.S. 307, 322-23 (1979). It is further clear, that a petitioner is entitled to habeas relief on this claim only "if it is found that upon the record evidence

adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324. Without belaboring the discussion, as presented in the previous discussion on the autopsy, the state presented three eyewitnesses to the crime and toxicology reports that indicated the levels of heroin in the victim's blood. Simply put, the state court's decision that found that the jury could have delivered a verdict of guilt based on the evidence presented, and in the absence of an autopsy, was clearly reasonable.

Further, inasmuch as Petitioner claims that the state is under some duty to perform an autopsy under the circumstances of this case, his contention also fails. Generally, claims on habeas relief that insinuate a violation of state law are not cognizable. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner has not raised, nor is the Court aware of, any constitutional or federal mandate that a state perform an autopsy on a homicide victim. *See e.g. Guidry v. Cain*, No. 04-2509-L, 2005 WL 1330133 (W.D. La. May 31, 2005) (finding no constitutional infirmity where no autopsy was performed on a victim); *Hegdal v. Fisher*, No. 01-cv-136, 2004 WL 1810330 (E.D.N.Y. Aug. 11, 2004) (finding same).

*2. The Jury Instructions*

Under West Virginia law, felony murder is defined as

> Murder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four, chapter sixty-a of this code, is murder of the first degree.

W. Va. Code § 61-2-1. The West Virginia Supreme Court of Appeals has boiled this down to three elements the state has to prove: (1) the commission of or attempt to commit one or more of the

enumerated felonies; (2) the defendant's participation in such commission or attempt; and (3) the death of the victim as a result of injuries received during the course of such commission or attempt. *State v. Mayle*, 357 S.E.2d 219, 224-25 (W. Va. 1987). The jury instruction in Petitioner's case read as follows:

> Under West Virginia law a homicide is also considered first degree murder if it occurs accidentally or otherwise during the commission of, or the attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, and/or manufacturing or delivering of a controlled substance.
>
> Where the defendant participated in such commission or attempted commission, or where the death of the victim occurs accidentally or otherwise as a direct result of injuries received as a result of the Defendant's commission or attempt to commit one of those enumerated felony offenses.
>
> This concept known as the Felony Murder Doctrine applies where the commission or the attempt to commit the enumerated felony and the death of the victim were part of one continuous transaction and were closely related in point of time and there is a direct causal connection.

The state court found that this instruction was an accurate reflection of the law because it adopts and follows the language of the statute and plainly informs the jury of the particular offense for which the Petitioner was charged.

It is clearly established federal law that there is an "'especially heavy' burden on a defendant who, like [Petitioner], seeks to show constitutional error from a jury instruction that quotes a state statute." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). Further, "[e]ven if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation. *Id.* (internal quotation omitted). To show a constitutional deficiency,

> the defendant must show both that the instruction was ambiguous and

that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. In making this determination, the jury instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. Because it is not enough that there is some slight possibility that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Id*. at 190-91 (internal quotations and citations omitted). The state court's finding that the jury instruction was an accurate reflection of the law is not contrary to, or an unreasonable application of, this clearly established law. The jury instructions included all of the elements of felony murder as enumerated by West Virginia statute and the state's highest court. Nor was it ambiguous to the point that there was reasonable likelihood that the jury applied it in a way to relieve the state of its burden of proving every element. In sum, the instruction did not "infect[] the entire trial [so] that the resulting conviction violates due process." *Id*. at 191.

### 3. The Jury Question

Petitioner's final claim is that his due process rights were violated when the judge did not answer the question posed by the jury about what "directly caused" meant. Again, to prevail on his due process claim in the habeas arena, Petitioner would have to show that the judges response, or lack thereof, "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. The state court found that the judges response to use the plain English understanding of the terms was not a violation of due process, and this Court cannot find that the answer infected the trial so much that due process was not afforded.

### V. CONCLUSION & RECOMMENDATION

The Court finds that the state decision in Petitioner's case was not contrary to, or an

unreasonable application of, clearly established federal law. Further, the state court did not base its decision on an unreasonable application of the facts. Thus, Petitioner is not entitled to habeas relief under § 2254. Accordingly, the undersigned recommends that Respondent's Motion for Summary Judgment (Doc. 42) be **GRANTED**.

Any party may, within fourteen [14] days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the pro se plaintiffs by certified mail, return receipt requested, to their last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

DATED: 12-18-2012

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE